Las Monjas Racing Corporation, Plaintiff and Appellant, v. Insular Racing Commission, Defendant and Appellee.

No. 36. Argued December 6, 1946.—Decided March 11, 1947.

*F. Fernández Cuyar* for appellant. *Diego O. Marrero* and *Luis E. Dubón* for appellee.

Mr. Justice de Jesús delivered the opinion of the Court.

The petitioner filed in the lower court a petition for injunction against the Insular Racing Commission. It substantially alleged that it owns the race track Las Monjas for whose operation it has obtained a license issued by the respondent, which expired on December 31, 1946; that according to the schedule, it was entitled to hold races on November 17, 19, 21, 24, 26, and 28 and December 1, 1946; that on November 6, 1946, it was summoned by the Insular Racing Commission to appear before it on November 12, 1946, for a hearing in connection with a charge made against it of violating Sections 39 and 260 of the Regulations [1] approved

by the Commission; that it was ordered to show cause at said hearing why they should not suspend indefinitely the races to be held at its race track, warning it that those assigned to the petitioner could be held in another race track. It further alleged that on the day and hour set for the hearing it appeared before the Commission and answered the order to show cause, denying the essential facts thereof and raising certain questions of law; that the Commission did not present any evidence in support of the charges, alleging that it did not have to, inasmuch as the Commission as well as each one of its members had direct and personal knowledge of the facts; that it was incumbent on the petitioner to prove its defense; that the petitioner objected to this order and clearly expressed its view that the Commission had the burden of proof and submitted the case without presenting any evidence; that on November 12, 1946, the Commission rendered a decision finding the petitioner guilty of a violation of Sections 39 and 260 of the aforesaid Regulations and as a punishment for such violation it decreed the indefinite suspension of the holding of the races in its race track "until the aforesaid deficiencies were corrected and *accepted* by the Insular Racing Commission." (Italics ours.) The petitioner closed with the allegation that the order of the Commission was

---

[1] The alleged violation consisted in having failed to correct all the deficiencies tha the Commission ordered it to correct in its race track. Those which it did not correct, according to the Commission, were the following:

"1. The Box of the Commission had not been erected in the place designated by the Chairman of the Insular Racing Commission.

"2. The toilet rooms of the Grand Stand are in a very bad condition.

"3. The slate and boards for announcing the horses which take part in each race have not been put up.

"4. The stable standing on the track between the 1200 and 1100 meters continues exactly the same.

"5. The course and levelling of the track at the curve between the 1000 and 1300 meters has not been done.

"6. Rain pipes have not been installed in the galvanized-iron roofs of the paddocks in order to keep the water from flooding the front part of the stalls.

"7. There is a family still living in the paddock.

"8. The construction of the hangar where the starting gate should be kept while it is being used by said race track, has not been completed.

void, among other reasons: (*a*) because it deprived the petitioner of its property without due process of law, thus violating its right to have an opportunity to be heard, to face the witnesses, cross-examine them, and object to any evidence which for any reason should be immaterial and inadmissible, before being convicted; (*b*) because in any event the Commission lacks authority to suspend by itself the holding of races in the race tracks of Puerto Rico, without just cause and without the approval of the Governor; and (*c*) because the statute does not authorize the Insular Racing Commission to impose as a penalty or punishment for violations to its Regulations the suspension of the races and in so decreeing it, the Commission usurped legislative functions which have not been delegated to it. It further alleged that the decision of the Commission is abusive, arbitrary, and illegal and that unless its execution were enjoined, the petitioner would suffer the irreparable damages which were described in the petition. Based on these allegations and others which we need not mention here, the petitioner sought from the court *a quo* a writ of injunction directed against the Insular Racing Commission enjoining it from carrying out its decision of November 12, 1946, whereby said races were suspended and to restrain it from permitting that they be held in any other race track. It further sought a preliminary writ of injunction while the permanent writ was issued and to issue in the meantime a restraining order.

The lower court issued a restraining order, and an order to show cause, but on motion of the Commission, it set it aside and on November 20 last, pursuant to § 4(3) of the Injunction Act, as amended by Act No. 1 of February 25, 1946 (Laws of 1946, p. 2), it declared itself without jurisdiction and rendered judgment dismissing the petition for injunction with costs on the petitioner. From this judgment the present appeal has been taken.[2]

---

[2] After taking the appeal, the petitioner prayed this Court to issue a writ of injunction in aid of its jurisdiction and in the meantime to issue a restraining

# I

██ Since a license is a privilege and it does not constitute property nor is it a contract between the person licensed and the Government, its revocation does no take away any right under the Constitution. *People* v. *Department of Health,* 82 N. E. 187 (N.Y. 1907.) Consequently when the Legislature grants a license it may impose the terms which it deems reasonable for its temporary supension or revocation. Indeed, the Racing Act of Puerto Rico upon conferring authority on the Racing Commission to grant licenses also granted to it the power to suspend them temporarily, cancel or take them away. As to the temporary suspension, it empowered the Commission to decree it without the need of a previous hearing and did not grant the right of review in the courts. However, the power to cancel or take away the licenses was subject to the condition of giving the party an opportunity to be heard and granted him the right to judicial review.[3]

order, which we did, after giving bond. The writ of injunction in aid of our jurisdiction was not issued because when the Commission presented its memorandum there was so little time left for the last day of the races assigned to the petitioner that there was no reasonable time to decide the question, for which reason, when the order might have been issued, the injunction would have been · academic since all the races that the Commission had suspended would have been already held by petitioner under the restraining order issued by this court. At the hearing of the injunction, the parties stipulated to submit the case on its merits and as to this aspect of the matter the suit is not academic, because in the lower court as well as in this court, restraining orders were issued and the petitioner might be liable for damages.

[3] Section 7 of the Racing Act of Puerto Rico, as amended by Act No. 11 of April 18, 1932, reads thus:

"The Insular Racing Commission may, *for just cause and after hearing the parties and giving them an opportunity to defend themselves, suspend temporarily,* or cancel, the license of any race track, horse owner, jockey, trainer, or stableman; *Provided,* That any resolution of the Insular Racing Commission cancelling any of said licenses shall be appealable to the district court of the place where the appellant resides. The appeal shall not suspend the effects of the resolution appealed from unless the district court before which the appeal is filed, issues, after the giving of bond, a writ of supersedeas. The procedure for this appeal shall be the same as that now in force in regard to appeals from municipal courts to district courts." (Laws of 1932, pages 198–200) (Italics ours.)

We shall now determine the difference between a temporary suspension and the revocation of a license. Once the distinction is established, we shall decide whether the order of the Racing Commission of November 12, 1946, complained of by the petitioner, is a temporary suspension or whether notwithstanding its being so labeled by the Commission it really constitutes a cancellation of the license.

The temporary suspension, as distinguished from the cancellation—which has the character of permanency—ought to be for a definite period, which should appear from the face of the order decreeing the suspension. The case of *State* v. *Strauss,* 49 Md. 288, (1878), deals with the construction of a Maryland statute authorizing the Board of Police Commissioners of Baltimore, whenever in their judgment the public peace and tranquility should require it, to order all saloons to be closed temporarily. It further provided that any person who should refuse or fail to obey this order, shall be guilty of a misdemeanor. Strauss was charged with having refused to obey an order of said Board, requiring all drinking saloons to be closed temporarily "until further notice." In discharging the defendant, the court stated that, although the Legislature had not exceeded its authority in conferring such power on the Board of Police Commissioners, however, the latter had exceeded itself, because its authority to close all saloons was limited to a short and definite period

This § 7, as amended by Act No. 17 of July 15, 1935, reads thus:

"Every license issued by the Insular Racing Commission shall have printed upon it the conditions under which it is granted, the Commission reserving the right to revoke it, cancel it, or *suspend it temporarily; Provided,* that for the cancellation of any of the licenses issued by the Insular Racing Commission, the latter shall grant the party a previous hearing and the opportunity to defend himself; *Provided, further,* that any resolution of the Insular Racing Commission cancelling the license of any race-track shall be appealable to the district court of the place where the appellant resides. The appeal shall not suspend the effect of the resolution appealed from, unless the district court to which the appeal has been taken directs after bond has been given, a writ of supersedeas. The procedure for this appeal shall be the same as that now in force in regard to appeals from municipal courts to district courts in civil cases." (Laws of 1935, Special Session, page 96.) (Italics ours.)

and, consequently, the order to close them "until further notice" was void and no information could be grounded thereon since the order was indefinite.

In Black's Law Dictionary the word "temporary" is defined thus: "That which is to last for a limited time only, as distinguished from that which is perpetual, or *indefinite*, in its duration." (Italics ours.)

We shall turn to the order of November 12, 1946, in order to determine its nature. This order in its dispositive part, provides:

"WHEREFORE, IT IS ORDERED:

"1. That the so-called causes of fact are declared not proved and it dismisses in its entirety the so-called questions of law contained in the answer to the rule to show cause;

"2. That the holding of races in the race track of the defendant, Las Monjas Racing Corporation, are suspended until the deficiencies are corrected and *accepted* by the Insular Racing Commission;

"3. That the Registration Judge shall hold registrations for the races to be carried out on November 17 and 19, 1946, and on November 13, 1946, at 10:00 A.M. in Las Casas Racing Track in order that said races should be held at Las Casas Racing Track.

"4. That until Las Monjas Racing Corporation corrects the deficiencies referred to in this order, the other races to be held in its race track shall be had in the other two racing tracks, according to the distribution made by the Insular Racing Commission.

"5. The races shall be held in these race tracks without prejudice to the turns already assigned pursuant to the order of this Commission of December 14, 1945." (Italics ours.)

The order of November 12, 1946, as we have seen, deprives the petitioner from holding the races in its race track until the deficiencies which we have pointed out under footnote 1 have been corrected and *accepted* by the Commission. Supposing that these deficiencies could be immediately corrected —something which is physically impossible because of the nature of the deficiencies—and it were possible for the petitioner, therefore, to specify the date of the completion of the construction, it is fit to ask, on what date shall the Commission approve them? The legal effect is the same as that of

the condition involved in *State* v. *Strauss, supra.* There the saloon could be opened when the Board of Police Commissioners deemed it advisable to give "a further notice." In the present case, the petitioner could hold the races when, upon completing the work, the Commission deemed it advisable to notify the acceptance thereof which could be within a week or within two or three days, after the works were completed. The order being indefinite it cannot be considered as a temporary suspension.

Since it is not a temporary suspension and it being exclusively in the hands of the Commission to delay the acceptance of the work to correct the deficiencies until December 1, 1946, at which time petitioner's license expires because it is the last day on which races are to be held in 1946, we must conclude that the order of November 12, 1946, is a cancellation.

■ Since it is a cancellation or revocation of the license, did the Commission act within the authority granted under § 7 of the Racing Act of Puerto Rico, providing that "for the cancellation of any of the licenses issued by the Insular Racing Commission, the latter shall grant the party a previous hearing and the opportunity to defend himself?" The Commission notified the petitioner of the charges and set a day for hearing. On that day the petitioner appeared and denied the charges, but the Commission failed to present any evidence in support thereof, alleging that through an investigation which they had previously carried out, they had learned that the deficiencies had not been corrected.

This is not the hearing contemplated by law. In *Int. Com. Comm.* v. *Louis & Hash. R. R.,* 227 U. S. 88, 93 (1913), the Court said:

"The Commission is an administrative body and, even where it acts in a quasi-judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties. *Int. Com. Comm.* v. *Baird,* 194 U. S. 25. But the more liberal the practice in admitting testimony, the more imperative

the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the Commissioners cannot act upon their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding; for otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the Commission had before it extraneous, unknown but presumptively sufficient information to support the finding. *United States* v. *Baltimore & Ohio S. W. R. R.,* 226 U. S. 14.''

This same doctrine was followed in *Crowell* v. *Benson,* 285 U. S. 22, 48 (1932), and *Moran* v. *School Committee of Littleton,* 59 N. E. (2d) 279, 281 (Mass. 1945).

The petitioner not having had a hearing and an opportunity to defend itself as required by § 7 of the Racing Act of Puerto Rico, we must now determine whether or not the court *a quo* erred in denying the petition for injunction for lack of jurisdiction.

## II

As we have pointed out, the court *a quo* in denying the petition for injunction relied on § 4 of the Act to define injunctions, etc., as amended by Act No. 1 of February 25, 1946 (Laws of 1946, p. 2). Before going over this Act, we must bear in mind the legislative intent as set forth in the statement of motives preceding the Act, which reads as follows:

''Section 1.—Statement of Motives.—Any law enacted by the Legislature of Puerto Rico should be deemed to be constitutionally valid unless and until it has been declared invalid by final, firm, unappealable and unreviewable judgment. The issuance of restraining orders and injunctions by inferior courts in connection with the enforcement of public statutes and other acts of public administration disrupts the orderly processes of government and creates uncertainty and confusion in the enforcement of the law by reason of the diversity

of opinions among the various judges as to the validity or constitutionality of various public statutes and acts.''

In harmony with the Statement of Motives, § 4 provides:

''An injunction or restraining order cannot be granted:
''1. *     *     *     *     *     *     *
''2. *     *     *     *     *     *     *
''3. To restrain the application or enforcement of any statute of the Legislature of Puerto Rico, or the performance by a public officer, a public corporation, or a public agency, or by any employee or officer of such corporation or agency of any act authorized by a law of the Legislature of Puerto Rico, unless it has been determined by final, firm, unappealable, and unreviewable judgment that such statute or act authorized by law is unconstitutional or invalid.

''Any injunction, preliminary, permanent, or of the nature of a restraining order, *including any order to enforce the jurisdiction of a court or to secure the enforcement of any judgment,* issued under the circumstances set forth in this clause 3 and in force on the date this Act takes effect, or which may hereafter be issued, shall be null and ineffective.'' (Italics ours.)

The above copied provision contains two phases:

(*a*) It prohibits the issuance of an injunction or restraining order against a public officer, public corporation, etc., to restrain the application or enforcement of any statute of the Legislature of Puerto Rico, unless it has been determined by final, firm, unappealable, and unreviewable judgment, that such statute is unconstitutional or invalid; and

(*b*) It prohibits the issuance of an injunction or restraining order to restrain the performance by a public officer, public corporation, etc., of any *act, authorized* by a law, of the Legislature of Puerto Rico, unless it has been determined by final, firm, unappealable, and unreviewable judgment that such act is unconstitutional or invalid.

In the present case the constitutionality or validity of the Racing Act of Puerto Rico has not been questioned. Petitioner challenges the constitutionality or validity of the act of the Commission. This being so, the first step we must take in order to decide if petitioner's case falls within the

purview of § 4, is to determine whether the action of the Commission is an act authorized by law. The criterion to determine under this statute whether an act of a public officer is authorized by law, does not consist in whether the act is valid or constitutional. Precisely the determination of the constitutionality or validity of the act is what should be first decreed by final, firm, unappealable and unreviewable judgment before issuing the restraining order or the writ of injunction. The rule to be followed is first to determine whether the act is covered by the authority granted by law to the officer, public corporation, etc.

We have already seen that the authority granted by law to the Racing Commission to cancel any license issued was subject to the condition of giving the party "a hearing and an opportunity to defend himself." Therefore, the act of the Racing Commission in cancelling petitioner's license without holding a hearing and giving it an opportunity to defend itself is an invalid act not authorized by law, to which the prohibition contained in § 4 of the Injunction Act is not applicable, and the lower court erred in denying the petition for injunction for lack of jurisdiction.

If an adequate remedy were not available in the ordinary course of law, the writ of injunction sought by petitioner would lie. *Maldonado* v. *Racing Commission,* 64 P.R.R. 481, and *Sifre* v. *Pellón,* 54 P.R.R. 559. But § 7 of the Racing Act of Puerto Rico, as we have seen (note 3), grants to the aggrieved party whose license has been cancelled a remedy which is as adequate and efficient as the injunction. This remedy consists in appealing to the district court of the district where appellant is domiciled. It is true that this appeal does not stay the effect of the order appealed from, but such stay may be obtained by procuring from the district court a writ of supersedeas conditioned on the filing of a bond. This remedy, of course, excludes an injunction, and since in this case the act involved is not one authorized by law, the

writ of supersedeas would not be barred by Act No. 1 of February 25, 1946 (Laws of 1946, p. 2).

This being so, the judgment denying the petition for injunction and cancelling the restraining order, although predicated upon erroneous grounds, is correct in its result and it is therefore affirmed.

Mr. Justice Snyder did not participate herein.